IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WYNSTON DAY ) | |
|       Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | CIVIL No. 14-cv-0971-MJR-SCW |
| ARBUCKLE, ) | |
| T. OCHS, ) | |
| BRUNNER, and ) | |
| JORDAN VAUGHN ) | |
| ) | |
|       Defendants. ) | |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

## Introduction and Procedural Background

Pro se Plaintiff Wynston Day, currently incarcerated at Pontiac Correctional Center, filed this case on September 8, 2014 alleging that his constitutional rights were violated when he was permitted access to drugs which he then used to attempt suicide while at Lawrence Correctional Center. (Doc. 5). After threshold screening, four claims remain: 1) an Eighth Amendment claim against Defendant Arbuckyle for deliberate indifference to mental health needs for failing to monitor Plaintiff during his suicide watch thus enabling him to attempt suicide with his accumulated prescription pills; 2) Eighth Amendment claim against Defendants Vaughn and Brunner for deliberate indifference to mental health and medical needs, for failing to summon medical assistance for Plaintiff when he reported he had taken an overdose of bills; 3)  Eighth Amendment claim against Defendant Ochs, for subjecting Plaintiff to excessive force and injuring his hand and arm; and 4) Eighth Amendment claim against Defendant Arbuckyle for deliberate indifference to medical needs, for failing to treat Plaintiff's pain and swelling from his injured hand after the incident in

1

Count 3. (Doc. 6). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on whether Day exhausted his administrative remedies before filing suit. For the following reasons, the undersigned **RECOMMENDS** that the Court **GRANT** the Motions in Defendants' favor. (Doc. 38) (Doc. 46).

Defendants Brunner and Ochs filed their Motion for Summary Judgment on February 10, 2015. (Doc. 38). Likewise, Defendant Arbuckyle filed a Motion for Summary Judgment on February 10, 2015. (Doc. 46). Plaintiff filed a Response on February 24, 2015. (Doc. 51). Nurse Arbuckyle filed a Reply on March 9, 2015, and stated that exceptional circumstances justified the filing of the reply because Plaintiff had represented certain disputed facts as uncontroverted. (Doc. 53). At the time of the hearing, Defendant Vaughn had not filed a motion for summary judgment on the issue of administrative remedies. The undersigned held a hearing on this matter on June 12, 2015. (Doc. 60). Plaintiff appeared for himself. Matthew Tamul appeared for the IDOC defendants. Jacob Thessen appeared for Defendant Arbuckyle. Plaintiff testified on his own behalf. Collin Ray and Jeffrey Strubhart testified on behalf of the Defendants.

## LEGAL STANDARDS

1. **Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions. The rule states that summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled judgment as a matter of law. **Dynegy Mktg. & Trade v. Multiut Corp., 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).** The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the

lack of any genuine issue of material fact. **Celotex Corp. v. Catrett, 477 U.S. 317 323 (1986).** In determining whether a genuine issue of material fact exists, the Court must view the record in a light most favorable to the nonmoving party. **Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).**

When a motion for summary judgment is made with respect to *Pavey*, the first step in the sequence, as set out by Judge Posner, is for the judge to hold a hearing on the issue of exhaustion. **Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008).** A case can only move onto the merits after such exhaustion issues have been decided. **Id.** When "factual issues relating to the defense of failure to exhaust administrative remedies," are up for consideration, these will be decided by a judge. **Id. at 740-41.**

2. **PLRA's Exhaustion Requirement**

Suits brought by prisoners are governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C § 1997e. PLRA requires a prisoner to first exhaust all administrative remedies available before bringing an action concerning prison conditions. **42 U.S.C. § 1997e(a).** The exhaustion requirement of the PLRA is dependent upon the procedures established by the state in which the prison is located. **Jones v. Bock, 549 U.S. 199, 218 (2007).** Unexhausted claims may not be brought to court. **Jones, 549 U.S. at 211 (citing Porter v. Nussell, 534 U.S. 516, 524 (2002)).**

The Seventh Circuit requires strict compliance in regards to exhaustion. "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." **Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002).** This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." **Id. at 1025.** If the prisoner fails to comply with the established procedures, including time restraints, the court will not consider the grievance. **Pavey, 663 F.3d at 903.**

3

The purpose of the exhaustion requirement is two-fold. **McCarthy v. Madigan, 503 U.S. 140, 145 (1992).** First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. **Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006); Woodford v. Ngo, 548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." **Porter, 534 U.S. at 524; see Booth v. Churner, 532 U.S. 731, 737 (2001) (noting that PLRA's requirement will help "filter out some frivolous claims.").**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait until he has completed the established process and may not file in anticipation that administrative remedies will soon be exhausted. **Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C § 1997e(a)); Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004).** A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted while the suit is pending. **Perez, 182 F.3d at 535.**

3. **Exhaustion Requirement under Illinois Law**

Inmates confined in the Illinois Department of Corrections must adhere to the Department's Grievance Procedures for Offenders in order to properly exhaust claims; anything less is a failure to exhaust. **20 Ill. Admin. Code § 504.810.** The prisoner must first speak with their Counselor about the issues they raise, and if the dispute is not resolved, the grievance must be filed within sixty days of the events or occurrence with the Grievance Officer. **20 Ill. Admin. Code § 504.810(a).** The grievance must:

> Contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(b).** The grievance officer must then review the grievance and report findings and recommendations to the Chief Administrative Officer ("Warden"). **20 Ill. Adm. Code § 504.830(d)**. The prisoner then has the opportunity to review the Warden's response, and if he is unsatisfied, he may appeal to the Director through the Administrative Review Board ("ARB") within 30 days of the Warden's response. **20 Ill. Adm. Code § 504.830(d); 20 Ill. Adm. Code § 504.850**. The ARB is then required to provide a written report to the Director of its recommendation on the grievance and the Director "shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.850(e), (f).**

Alternatively, a prisoner "may request a grievance by handled on an emergency basis by forwarding the grievance directly to the Chief Administrative Officer." **20 Ill. Adm. Code § 504.840**. The CAO must make a determination whether the grievance shall be handled on an emergency basis. **20 Ill. Adm. Code § 504.840**. If so, the CAO "shall expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." **20 Ill. Adm. Code § 504.840**. Once the CAO has informed the grieving inmate of its decision, the inmate may then appeal that decision to the Administrative Review Board ("ARB") on an expedited basis. **20 Ill. Admin. Code § 504.850(g)**. A final decision of the ARB will exhaust the grievance requirement.

In certain circumstances, a prisoner may exhaust his remedies by filing a grievance directly with the ARB. **20 Ill. Adm. Code § 504.870**. Those circumstances include grievances addressing 1) placement in protective custody; 2) involuntary administration of psychotropic medication; 3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides; and 4) all other issues, with the exception of personal property issues, that occurred at a previous institution. ***Id.***

**FINDINGS OF FACT**

Plaintiff's Corrected Complaint,[1] filed on September 22, 2014, alleges that on or about February 27, 2014, he was taken to the health care unit after ingesting an "exorbitant" amount of pills in a suicide attempt. (Doc. 5, p. 4). Plaintiff further alleged that he was on suicide watch at the time of the incident, and due to Arbuckyle's deliberate indifference, he was allowed to accumulate the pills. (Doc. 5, p. 4). Plaintiff alleged that he told Vaughn that he swallowed a lot of pills, but Vaughn did not call for medical attention. (Doc. 5, p. 5). Plaintiff then went to non-party Lt. Dallas and swallowed more pills in front of him. (Doc. 5, p. 5). Plaintiff alleged that on March 17, 2014 he told Brunner that he had taken an overdose of pills, but that he was denied medical care until he took more pills in front of non-party Officer Kelsey. Ochs then told Plaintiff to cuff and then attempted to crush Plaintiff's hand in the cuck hole of his cell. (Doc. 5, p. 6).

Plaintiff's complaint alleges that he filed an emergency grievance regarding these events on March 25, 2014, but received no response. (Doc. 5, p. 6). He then sent a grievance to his counselor on April 2, 2014, but received no response. (Doc. 5, p. 6). He then filed a grievance directly with the ARB. (Doc. 5, p. 7). He alleges that he received the ARB's response on August 29, 2014. (Doc. 5, p. 7).

Plaintiff submitted copies his grievances as exhibits to the Complaint and incorporated them by reference into his response to the motions for summary judgment. The first grievance he submitted is dated March 21, 2014; it is not marked emergency. (Doc. 5-1, p. 13). It has no marks that indicate it was ever received by the institution. (Doc. 5-1, p. 13). Plaintiff submitted a grievance that appears identical to the first, which is also dated March 21, 2014. (Doc. 5-1, p. 17). Like the first grievance, it has no marks or stamps that would indicate that any institutional employee received it. (Doc. 5-1, p. 17). Plaintiff's third exhibit is dated April 13, 2014. (Doc. 5-1, p. 19). This

---

[1] Plaintiff filed this Complaint because his original Complaint was missing pages. The Court will refer to the corrected complaint as simply "the Complaint."

grievance is also not marked emergency. (Doc. 5-1, p. 19). Plaintiff's fourth exhibit is dated May 15, 2014. (Doc. 5-1, p. 22). In addition to repeating the allegations in the Complaint, the grievance also states that Plaintiff submitted an emergency grievance on March 25, 2014. (Doc. 5-1, p. 22). The grievance further states that Plaintiff sent a grievance to counselor Ray on April 2, 2014. (Doc. 5-1, p. 23). Plaintiff's Complaint states that the grievances attached to his Complaint are copies of his requests for "administrative remedy" [sic], although he states that he had no copy of his first emergency grievance because he was unable to make copies when he submitted it.

Plaintiff ultimately submitted the grievance dated April 13, 2014 to the ARB. The grievance repeats the allegations in the Complaint, as well as Plaintiff's claims that he filed an emergency grievance on March 25, 2014 and a normal grievance on April 2, 2014. (Doc. 5-1, p. 2-3). The grievance also states that Plaintiff asked counselor Ray when he would get his grievances back on April 8, 2014. (Doc. 5-1, p. 3). Ray allegedly responded that there was no time frame for him to return grievances and that he could take two years if he wanted. (Doc. 5-1, p. 3). The ARB received the grievance on April 21, 2014. (Doc. 5-1, p. 1). Billie Green rejected it on May 27, 2014 for failure to include the counselor's, grievance officer's, and CAO's response. (Doc. 5-1, p. 1). Plaintiff did not receive the grievance back until approximately July or August 2014.

Counselor Ray testified at the hearing that he was assigned to the segregation unit during the relevant time period. He further testified that it was his practice to log any grievance he received into the CHAMP system. He would also make an entry in CHAMP when he sent a grievance back through the mail. He denied telling Plaintiff he could take two years to return his grievance if he felt like it.

Plaintiff also offered his own testimony at the hearing. Plaintiff testified that he put an emergency grievance in the mail sometime between March 21 and March 25, 2014. He put the grievance in the bars of his cell with other mail. He believes he filed a regular grievance

7

approximately two weeks later, which would have been between April 3 and April 8, 2014. In response to questioning from the undersigned, Plaintiff testified that he has another lawsuit currently pending in the central district.

The undersigned takes judicial notice of certain facts in Plaintiff's case, 15-cv-1224-CSB, pending in the Central District of Illinois. First, Plaintiff's allegations in that suit are very similar to the allegations present here. Specifically, Plaintiff alleges that Defendants were deliberately indifferent and violated his rights after a suicide attempt. Plaintiff attached a disciplinary report to that complaint that stated that Plaintiff had given an employee a note that stated that Plaintiff had already taken 31 pills, and then swallowed a handful of unknown pills in front of the employee. Plaintiff pled guilty to this charge. Plaintiff alleged that he exhausted his administrative remedies in that case when he wrote an appeal to the director and a response was received. He also alleged other IDOC officials tried to obstruct the process by engaging in excessive delays and not responding to grievances.

## ANALYSIS

This case comes down to a credibility determination. Ray testified that, as Plaintiff's counselor, he never received any grievances from Plaintiff about the relevant events. Plaintiff testified that he had put several grievances regarding the relevant events in the bars of his cell for pick up. He also argued that Ray had access to them and could have thrown them away. Plaintiff argues that his April 13 grievance should have exhausted his remedies because it was rejected by the ARB for not including prior responses, which were unavailable to Plaintiff. Thus, Plaintiff argues, he did all he could to exhaust his grievances. The undersigned finds Plaintiff's testimony not credible.

First of all, Plaintiff's Complaint is unequivocal that he filed an emergency grievance on March 25, 2014 and a non-emergency grievance on April 2, 2014. Plaintiff repeats that claim in

some of the grievances attached to the Complaint. But although Plaintiff purported to attach copies of the grievances that he never got a response from to his Complaint, none of those grievances bear either of those dates. Instead Plaintiff submitted two largely identical grievances, dated March 21, 2014, a grievance dated April 13, 2014, and a grievance dated May 15, 2014. Possibly as an attempt to mask these inconsistencies, Plaintiff testified that he could not remember when he filed his original grievance, but that he believed it was between March 21 and March 25. However, Plaintiff Complaint states that he never made a copy of the March 25 emergency grievance. There is also no testimony that Plaintiff began the grievance process again in May, after he had already sent off his appeal to the ARB. The March and May grievances attached to Plaintiff's Complaint should not exist because Plaintiff's Complaint states that he only wrote one emergency grievance in March and kept no copy of it. And Plaintiff neither described nor testified to any grievances that he filed on May in the relevant events. The undersigned can only conclude that the exhibits are fabrications. In sum, the written record Plaintiff submitted in support of his claims of exhaustion is almost entirely inconsistent with his other written accounts and his testimony.

There is also some cause to doubt Plaintiff's credibility when one compares the present Complaint to Plaintiff's new complaint in the central district. Both complaints contain allegations that defendants were deliberately indifferent and that their indifference put Plaintiff in a position to attempt suicide.[2] But it is clear from the multiple allegations that Plaintiff stages these events for maximum effect, and that his concern over his access to medication may be less than genuine. These circumstances support an inference that Plaintiff is not a credible person generally. But more damningly, although Plaintiff is at a different correctional institution and surrounded by new staff, Plaintiff's description of his attempts to exhaust his administrative remedies there is identical to what he claims here. Like this case, Plaintiff repeats the allegation that officials did not respond to his

---

[2] These comments are not meant to be a reflection on the merits of the case

9

grievances, thus requiring him to file a grievance directly with the ARB. He also repeats that, having gotten a response from the ARB, he has exhausted. That is the exact same pattern Plaintiff alleges in this case. The undersigned believes that it is unlikely that Plaintiff would be subject to an identical stream of obstruction at two different prisons.

For these reasons, the undersigned finds Ray's testimony that he would have logged Plaintiff's grievances, had he received any, more credible than Plaintiff's testimony that he filed grievances. The undersigned therefore **RECOMMENDS** that the Court **GRANT** the Motions for Summary Judgment. (Doc. 38) (Doc. 46).

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendants' Motions for Summary Judgment (Doc. 38) (Doc. 46) be **GRANTED**. If this Report is adopted, then only Plaintiff's claims against Defendant Vaughn, who has filed an un-ripe Motion for Summary Judgment will remain.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., **Snyder v. Nolen**, 380 F.3d 279, 284 (7th Cir. 2004).* <u>**Objections to this Report and Recommendation must be filed on or before July 9, 2014**</u>. *See* **FED. R. CIV. P. 6(d); SDIL-LR 5.1(c).**

**IT IS SO ORDERED**.

**DATED: June 22, 2015**              s/      *Stephen C. Williams*
                                      **Stephen C. Williams**
                                      United States Magistrate Judge