IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WYNSTON DAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 14–cv–0971–MJR–SCW |
| NURSE ARBUCKLE, | ) |
| T. OCHS, | ) |
| C/O BRUNNER, and | ) |
| JORDAN VAUGHN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**REAGAN, Chief Judge:**

*Pro se* Plaintiff Wynston Day, currently incarcerated at Pontiac Correctional Center in the Illinois Department of Corrections ("IDOC"), brought this § 1983 civil rights case in September 2014. Plaintiff's claims stem from his time at Lawrence Correctional Center, where (he alleges) he was subjected to Defendants' deliberate indifference to his intentional ingestion of prescription pills, excessive force for mistreatment in the aftermath of one of his suicide attempts, and deliberate indifference to the injuries sustained via that excessive force.

The case comes before the Court on three motions for summary judgment, but on only one issue: whether Plaintiff exhausted his administrative remedies before filing suit. Pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule 72(b), and Local Rule

1

72.1(a), Magistrate Judge Stephen C. Williams held a hearing on the matter and—concluding Plaintiff was not credible—has recommended granting summary judgment to Defendants. After a thorough review of the record, the undersigned **ADOPTS** Judge Williams R&R in its entirety, and **GRANTS** summary judgment to all Defendants.

## BACKGROUND

According to Plaintiff's Complaint, he was incarcerated at Lawrence in February 2014 when, while on suicide watch, he ingested an "exorbitant" amount of pills in a suicide attempt and was taken to Lawrence's health care unit. (It was due to Defendant / Nurse Arbuckle's deliberate indifference, Plaintiff alleges, that Plaintiff was able to accumulate the number of pills sufficient for the attempts described herein.) Plaintiff told Defendant / Correctional Officer Vaughn about the attempt, but was only provided help after he told someone else.

The Complaint goes on to describe two more suicide attempts, one in early March and one on March 17, 2014. After the March 17 attempt, Plaintiff told Defendant / Correctional Officer Brunner he had ingested pills but, as before, Brunner ignored Plaintiff and another IDOC employee eventually got Plaintiff help. Also on March 17, Defendant Ochs taunted Plaintiff, then slammed his hand in his cell door's chuckhole. In the health care unit, Plaintiff saw Nurse Arbuckle, who ignored his hand injuries.

As pertinent here, Plaintiff's Complaint also includes two descriptions of his attempts to grieve about Defendants' actions to institutional authorities. According to

the Complaint, Plaintiff filed an emergency grievance on March 25 (he says he couldn't make copiesof it, so he did not include it), but received no response. Secondly, he sent a grievance to his counselor on April 2, but received no response. He filed a grievance directly with Illinois' Administrative Review Board ("ARB"), and finally got a response on August 29, 2014.

Plaintiff attached copies of his grievances to his Complaint and incorporated those copies into his summary judgment response. There are four grievances:

1. **First grievance**: dated March 21, 2014, and not marked "emergency." No timestamp or other indication it was ever received by institutional personnel.
2. **Second grievance**: dated March 21, 2014, and identical to the first.
3. **Third grievance**: dated April 13, 2014, not marked "emergency."
4. **Fourth grievance**: dated May 15, 2014. Rehashes the allegations in the Complaint, and describes Plaintiff's attempt to file emergency grievance on March 25.

Judge Williams found that Plaintiff submitted the third grievance to the ARB, which rejected it because Plaintiff had not, as required, included his counselor's response, the grievance officer's response, or the warden's response.

While Plaintiff claimed his counselor (Counselor Ray—not a Defendant here) thwarted the grievance process by telling Plaintiff he could sandbag and "take two years" if he wanted, Ray testified otherwise at the *Pavey* hearing. Ray testified that he was indeed assigned to the segregation unit during the relevant timeframe, but that he certainly would have made an entry into the grievance log had he either received or mailed back. According to Ray's testimony, no such entry existed for Plaintiff's

3

purported April 13, 2014 grievance—or for any of the other grievances purportedly filed by Plaintiff. Plaintiff countered that Ray, who had access to all the grievances, must have destroyed them, thereby giving the ARB a reason to deny any grievances sent to them and thwarting his attempts to exhaust his administrative remedies.

Concluding that the matter of exhaustion hinged on Plaintiff's credibility versus Officer Ray's, and that Ray was the more credible of the two, Judge Williams issued a Report and Recommendation ("R&R") in which he recommends granting summary judgment to Ochs, Brunner, and Arbuckle. Plaintiff filed a timely objection. In a subsequent summary judgment motion (unripe at the time of Judge Williams' hearing, ripe now), the fourth Defendant—Vaughn—adopted the other three Defendants' position *in toto*, and Plaintiff likewise adopted his own counterarguments whole cloth. In other word, the matter of exhaustion is entirely ripe for ruling.

## LEGAL STANDARDS

When a party timely objects to a magistrate judge's R&R, the district court—giving deference to the magistrate judge's findings of fact and credibility determinations as noted below—must undertake *de novo* review of the portions to which an objection has been made. **28 U.S.C. § 636(b)(1)(C).** Here, Plaintiff parrots many points from his summary judgment response (*i.e.*, generally does not trigger *de novo* review), but does raise two new points.

First, he asserts any credibility issue should be taken to a jury, rather than decided at this stage of the case. That argument is fruitless, as the Seventh Circuit's entire *Pavey* scheme permits findings of fact by the judge at the exhaustion stage. *See Pavey v. Conley*, **544 F.3d 739, 741 (7th Cir. 2008) ("Juries decide cases, not issues of judicial traffic control.").** Secondly, Plaintiff argues Judge Williams misconstrued the record in a parallel case (brought in the Central District for largely the same theory, but stemming from attempted suicide attempts at another institution). The record in that case contains a disciplinary report from the other institution describing a suicide attempt there. While Judge Williams' acknowledgment that "Plaintiff pled guilty" to that disciplinary charge may be erroneous, the matter is immaterial. Judge Williams invoked Plaintiff's behavior at another institution to show his familiarity with (and pattern of behavior regarding) Illinois exhaustion procedures, *not* to reflect upon the ultimate merits of this case.

As an inmate, Plaintiff's lawsuit is governed by the Prison Litigation Reform Act ("PLRA"), which requires a prisoner to exhaust his administrative remedies before filing suit. **42 U.S.C. § 1997e.** In Illinois, the grievance process requires a prisoner to speak with his counselor, file a written grievance, then appeal that grievance through the institutional and state / ARB levels. **20 Ill. Admin. Code §§ 504.810–850.** A prisoner may also request a grievance be handled "on an emergency basis" by forwarding it straight to the warden, who must expedite processing of the grievance; the inmate may

5

directly appeal the warden's decision to the ARB. **20 Ill. Admin. Code §§ 504.840, 850(g).** Though the Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement, *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006)**, the PLRA's plain language is clear: an inmate must exhaust only those administrative remedies that are available to him, **42 U.S.C. § 1997e(a).** Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance, *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)**, or—as Plaintiff claims here—when prison employees thwart a prisoner from exhausting, *Dole*, **438 F.3d at 809.**

In *Pavey v. Conley* (*Pavey I*), the Seventh Circuit set forth the procedures for tackling the exhaustion issue. The first step is for the judge to conduct "a hearing on exhaustion and [permit] whatever discovery relating to exhaustion he deems appropriate." *Pavey I*, **544 F.3d 739, 742 (7th Cir. 2008).** And in holding that hearing, a court may credit the testimony of one witness over another. *See Pavey v. Conley (Pavey II)*, **663 F.3d 899, 904 (7th Cir. 2011) (affirming the factual findings of a magistrate judge, whose R&R included factual findings the plaintiff was not credible).** In other words, and unlike other summary judgment motions, the very purpose of *Pavey I* is to allow a judge to resolve swearing contests between litigants.

So while the Court typically undertakes *de novo* review of portions of R&Rs to which a party objects, the Court will give great deference to Judge Williams' factual findings and credibility determinations. *Pavey II*, **663 F.3d at 904.** *See also Towns v.*

*Holton*, 346 F.App'x 97, 100 (7th Cir. 2009) (great deference to credibility findings based on demeanor); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995) ("[D]*e novo determination* is not the same as a *de novo hearing*. **The district court is not required to conduct another hearing to review the magistrate judge's findings or credibility determinations.**") (emphasis added).

## ANALYSIS

Judge Williams' credibility determination is based on sound reasoning, and wholly controls the outcome of the exhaustion issue. In contrast to Ray—who was found credible in asserting that *had* Plaintiff filed any grievances he *would* have documented them—Plaintiff's testimony and documentary evidence were internally inconsistent.

Plaintiff's Complaint unequivocally refers to two (and only two) grievances: one filed March 25, 2014, and one filed April 2, 2014. But the only grievance he ever submitted to the ARB was dated April 13, 2014 (and included references to incidents happening as late as April 8, 2014)—a glaring oversight given the detail in the Complaint.

Most damningly, Judge Williams found both Plaintiff's March and May grievances (Grievances No. 1, 2, and 4) to be complete fabrications. According to both the language in the Complaint and Plaintiff's testimony, Plaintiff only ever filed two grievances: one in March (an emergency grievance he didn't keep a copy of) and one on

April 2. It follows that any grievance not from April 2 is a post-dated fabrication meant to circumvent the PLRA / *Pavey* requirements. And *all four* of the grievances provided by Plaintiff have other dates. Even ignoring the April grievance(s), Plaintiff's acquisition of two copies of a grievance he says he didn't make copies of (the March grievances—which, by the way, are not marked "emergency" as Plaintiff's position indicates they should be) is either a fabrication or a documentary miracle Plaintiff did not bother to explain. In short, Plaintiff's version of events is contradicted by both his own statements and the documents he provided, and Judge Williams' credibility findings against him were eminently reasonable.

Judge Williams, who was at the hearing and observed Plaintiff's testimony, weighed Plaintiff's conflicting documentary evidence alongside a finding that Plaintiff's testimony was not credible and that Ray's was. As one jurist from this district held:

> At *Pavey* hearings the court is permitted to make findings of fact and credibility assessments of witnesses. *See Pavey v. Conley* [*Pavey II*], 663 F.3d 899, 904 (7th Cir. 2011). Magistrate judges are in the best position to assess a witness's credibility because they have the opportunity "to observe the verbal and nonverbal behavior of the witnesses … [including their] reactions and responses to the [questions], their facial expressions, attitudes, tone of voice, eye contact, posture and body movements." *Krushaar v. Flanigan*, 45 F.3d 1040, 1052–53 (7th Cir. 1995). Clearly, [the magistrate judge] assessed the credibility of Plaintiff's statements, and found them lacking.

***Blakes v. Foutch*, No. 11–cv–0932–GPM, 2013 WL 5288158, at *3 (S.D. Ill. Sept. 18, 2013).** If Plaintiff's objection were to carry the day, then any inmate could, at the time he

8

filed suit, falsely claim to have been thwarted in past attempts to grieve his problems to prison officials, then prevail at a *Pavey* hearing based on no evidence other than his word. That is clearly not the rule contemplated by the PLRA or *Pavey I*, and it is not a proposition that warrants overturning Judge Williams' credibility findings.

## CONCLUSION

For the reasons articulated above, the undersigned **ADOPTS (Doc. 66)** Judge Williams' Report and Recommendation in its entirety, and **GRANTS** the motions for summary judgment filed by Defendants Brunner and Ochs (**Doc. 38**) and by Defendant Arbuckle (**Doc. 46**). Plaintiff cedes (*see* Doc. 67) that the same analysis applies to Defendant Vaughn's summary judgment motion, so that motion (**Doc. 64**) is also **GRANTED.** (An earlier version of Vaughn's summary judgment motion (**Doc. 62**) was rendered **MOOT** two days later when Vaughn filed the live, amended motion).

No claims remain in this case, so the Clerk is **DIRECTED** to enter final judgment against Plaintiff and in favor of all Defendants.

    **IT IS SO ORDERED.**

    DATE: <u>August 27, 2015</u>     s/ *Michael J. Reagan*
                                                             **MICHAEL J. REAGAN**
                                                             Chief Judge, U.S. District Court